UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM DEFREITAS,

    **Plaintiff,**

 v.                   **CASE NO:**

DELTA AIR LINES, INC.,

    **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, WILLIAM DEFREITAS, (hereinafter "Plaintiff" or "Mr. DeFreitas"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, DELTA AIR LINES, INC. (hereinafter "Defendant," "Delta," or "Company") and alleges:

**INTRODUCTION**

1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations, the Florida Civil Rights Act of 1992, as amended,

§ 760.10 et seq. ("FCRA"), and the Florida Workers' Compensation Retaliation Statute, Fla. Stat. § 440.205.

2.      As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability, and retaliated against him for engaging in protected activity and for filing a workers' compensation claim in violation of his rights under the ADA, Title VII, the FCRA, and Florida's Workers' Compensation Retaliation Statute.

3.      As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.      Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.      Plaintiff is WILLIAM DEFREITAS, a 54-year-old male who sustained a serious work-related injury to both hands that substantially limited his ability to perform manual tasks and required surgical intervention and ongoing medical treatment. Plaintiff resides in Tampa, Hillsborough County, Florida.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on his disability under the ADA and the FCRA, and is protected against retaliation under Title VII and the Florida Workers' Compensation Retaliation Statute.

10. Defendant employed Plaintiff from February 7, 2005, until his termination on November 26, 2024.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, Title VII, the FCRA, and the Florida Workers' Compensation Retaliation Statute.

13. The Defendant, DELTA AIR LINES, INC., is a corporation that conducts business throughout Hillsborough County, Florida, including at its Tampa Customer Engagement Center located at 5201 W Kennedy Blvd, Tampa, FL 33609, where Plaintiff was employed.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed more than fifteen employees.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADA, Title VII, the FCRA, and the Florida Workers' Compensation Retaliation Statute.

16. Accordingly, Defendant is liable under the ADA, Title VII, the FCRA, and the Florida Workers' Compensation Retaliation Statute for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On February 6, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation.

19. On June 30, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights in reference to his Charge of Discrimination (EEOC Charge No. 511-2025-01705) against Defendant.

20. This action is being filed within ninety (90) days of Plaintiff's

receipt of the Notice of Right to Sue from the EEOC.

21. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23. Plaintiff William DeFreitas began his employment with Defendant on February 7, 2005, in Miramar, Florida, as a sales agent. When Defendant closed its South Florida office in late 2006, Plaintiff relocated with the Company to Tampa, Florida.

24. Over the course of his career, Plaintiff advanced through multiple roles, including sales and ticketing, SkyMiles, manual reissues, social media, Team Lead/Supervisor, and ultimately Workforce Operations in the TPARES Operations department at the Tampa Customer Engagement Center ("CEC").

25. Over nearly twenty years of employment, Plaintiff maintained an exemplary record with no prior discipline, consistently met or exceeded expectations, and received regular raises, bonuses, and profit sharing. He earned approximately $87,000 annually and was entrusted with elevated system access privileges reserved for select employees.

26. Through seniority, Plaintiff earned a schedule with Thursday, Friday, and Saturday off, which he maintained for more than ten years and which also aligned with his court-ordered parenting plan.

27. In January 2023, Ken Ness became the Customer Experience Manager for Plaintiff's department, and workplace conditions thereafter deteriorated.

28. In February 2023, Plaintiff and several coworkers raised concerns to management regarding low morale, favoritism, and departmental dysfunction. Before the concerns were escalated to Human Resources, Mr. Ness questioned whether the employees were "absolutely sure" they wanted to proceed, signaling resistance to internal reporting.

29. Within weeks, Plaintiff was called into a surprise Human Resources meeting via Teams, falsely labeled the "leader" of the group complaints, and threatened with demotion, including statements that

employees could be sent "back to the phones" for raising concerns.

30.    On March 29, 2023, Plaintiff received his first discipline in nineteen years, a verbal coaching for tardiness, stemming from a newly implemented clock-in system that had never previously applied to the Operations team. Many employees initially failed to comply with the new system, yet Plaintiff was singled out for discipline.

31.    Around this same time, management began scrutinizing Plaintiff for minor and commonplace issues, including remaining past his shift for legitimate work-related reasons, conduct for which other employees were not disciplined.

32.    In April 2023, Plaintiff and others raised concerns regarding inappropriate conduct by coworker Jeff Gater, including inappropriate sexual comments and degrading statements directed toward female employees, which created an uncomfortable and hostile work environment. Management failed to elevate or properly investigate those complaints at the time.

33.    In June 2023, Plaintiff sustained a serious work-related injury to both hands, constituting his only workers' compensation claim during his employment. Despite medical treatment, including surgery and injections,

his condition significantly limited his ability to perform manual tasks. His treating physicians advised that he should not be working and that additional surgery would likely be required.

34.    During this same period, the hostile work environment intensified. For approximately a year, coworkers created and displayed degrading images throughout the workplace depicting Plaintiff in a humiliating and discriminatory manner, including references to his age and perceived sexuality. These images were visible to management and remained posted for extended periods.

35.    Only after complaints were raised did management hastily remove the degrading images, demonstrating awareness of their inappropriate nature. In one instance, an employee placed one such image on Plaintiff's computer lock screen without his permission.

36.    On October 24, 2023, Plaintiff was called into a meeting regarding alleged workplace conduct, including a pocketknife and unrelated incidents. The pocketknife allegation was pretextual, as employees, including management, regularly used tools such as box cutters, screwdrivers, and pocketknives as part of their job duties without discipline. This alleged conduct was not cited as a basis for Plaintiff's termination.

37.     Plaintiff submitted a written statement on October 31, 2023, asserting that the allegations against him were retaliatory.

38.     Plaintiff last worked on November 7, 2023, when he began an approved leave of absence due to his work-related injuries. While on protected leave, he continued to raise concerns about retaliation and workplace misconduct, including by directly contacting senior leadership.

39.     Despite being on protected medical leave, Defendant took the highly unusual step of suspending Plaintiff on May 31, 2024. The Company's investigation process was prolonged and irregular.

40.     Although Plaintiff was informed in November 2024 that the allegations against him were not substantiated, Defendant nevertheless proceeded to terminate his employment.

41.     On November 26, 2024, Defendant presented Plaintiff with a coercive ultimatum: immediate termination or retirement with benefits, providing only twenty-four hours to decide. The sole stated reason for termination was an alleged violation of a confidentiality policy related to a text message.

42.     Defendant's decision to allow Plaintiff to retire with full flight benefits, an outcome not afforded to other employees terminated for

misconduct, further underscores the pretextual nature of its stated justification.

43.    Throughout this period, similarly situated employees who engaged in more serious misconduct were treated more favorably. For example, one employee who threatened violence against a manager received only a final written warning. Another employee, implicated in a company-wide investigation involving the improper sale of flight benefits, also received only a final warning and remained employed. Jeff Gater, despite multiple complaints regarding inappropriate and offensive conduct, was retained and protected by management.

44.    In contrast, Plaintiff, despite his nearly twenty-year record without prior discipline, was terminated without progressive discipline.

45.    Defendant later attempted to rely on minor office conduct as justification for discipline. At the time these incidents occurred, management addressed them collectively and informally, often in a joking manner, and never singled out Plaintiff for discipline. Only after he engaged in protected activity did Defendant attempt to retroactively attribute such conduct to him.

46.    Defendant failed to follow its own progressive discipline policy

with respect to Plaintiff, despite his nineteen-year clean employment record.

47.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered severe anxiety, depression, and stress, along with significant economic harm, including lost wages, lost benefits, loss of accumulated flight privileges, and loss of seniority benefits.

48.     At all times relevant herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of his position with or without reasonable accommodation.

49.     Defendant's actions reflect a pattern of retaliation, disparate treatment, and pretextual justification for termination following Plaintiff's protected complaints and workers' compensation claim.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Disability Discrimination**
**42 U.S.C. §§ 12101-12213**

50.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51.     At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

52.    At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that he had a physical impairment that substantially limited one or more major life activities, including performing manual tasks, and he could perform the essential functions of his position with or without reasonable accommodation.

53.    Plaintiff's work-related injury to both hands substantially limited his ability to perform manual tasks and required surgical intervention and ongoing medical care, and his treating physicians advised that he should not be working.

54.    Defendant knew of Plaintiff's disability through, among other things, Plaintiff's work-related injury, his workers' compensation claim, and his disability-related medical leave.

55.    After Defendant learned of Plaintiff's disability and after Plaintiff took disability-related leave, Defendant subjected Plaintiff to adverse employment actions because of his disability.

56.    Those adverse employment actions included, among other things, escalating disciplinary scrutiny, suspending Plaintiff while he was on workers' compensation leave, and ultimately terminating his employment while he remained on protected medical leave.

57.    Defendant claimed to rely on a progressive discipline framework, yet Plaintiff had no prior disciplinary history in nearly twenty years, and the conduct used to justify termination was either never previously raised as a basis for discipline, was commonly tolerated, or was not cited at the time of termination.

58.    Defendant's stated reliance on alleged misconduct was a pretext, and Plaintiff's disability and disability-related limitations were motivating factors in the decision to terminate his employment.

59.    Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of disability in violation of the ADA.

60.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, WILLIAM DEFREITAS, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, DELTA AIR LINES, INC., and the following relief:

A.    A declaration that Defendant violated the ADA by discriminating against Plaintiff because of his disability;

B.   Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.   Compensatory damages as allowed by law;

D.   Pre-judgment and post-judgment interest as allowed by law;

E.   Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.   Such other and further relief as the Court deems just and proper.

<u>**COUNT II**</u>
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Retaliation**
**42 U.S.C. §§ 12101-12213**

61.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

62.   At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

63.   Plaintiff engaged in protected activity under the ADA by, among other things, sustaining a disability-related workplace injury, taking disability-related medical leave, and raising concerns regarding his mistreatment while on that leave.

64. Defendant knew Plaintiff engaged in protected activity under the ADA.

65. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

66. Those materially adverse actions included escalating scrutiny of Plaintiff, suspending him while he was on workers' compensation leave, and terminating his employment while he remained on protected medical leave.

67. The materially adverse actions taken against Plaintiff would dissuade a reasonable employee from engaging in protected activity under the ADA.

68. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions.

69. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the ADA.

70. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, WILLIAM DEFREITAS, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, DELTA AIR LINES, INC., and the following relief:

A.    A declaration that Defendant violated the ADA by retaliating against Plaintiff for engaging in protected activity;

B.    Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.    Compensatory damages as allowed by law;

D.    Pre-judgment and post-judgment interest as allowed by law;

E.    Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.    Such other and further relief as the Court deems just and proper.

## COUNT III
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Retaliation
### 42 U.S.C. § 2000e et seq.

71.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

72.    At all times material herein, Defendant was an employer within

the meaning of Title VII.

73. Plaintiff engaged in protected activity under Title VII by opposing what he reasonably believed to be unlawful conduct, including by reporting inappropriate sexual comments and degrading statements made by coworker Jeff Gater toward female employees, which created a hostile work environment.

74. Defendant knew Plaintiff engaged in protected activity under Title VII.

75. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse employment actions.

76. Those materially adverse actions included escalating hostility and scrutiny toward Plaintiff, subjecting him to his first discipline in nearly twenty years, suspending him, and ultimately terminating his employment.

77. Defendant took these actions because Plaintiff opposed what he reasonably believed to be unlawful conduct in the workplace.

78. Defendant's failure to properly investigate or act on the complaints regarding Jeff Gater, despite documented evidence of inappropriate conduct, demonstrates selective enforcement of workplace policies and reinforces that Plaintiff was targeted because of his protected

activity.

79. A causal connection exists between Plaintiff's protected activity and Defendant's materially adverse actions.

80. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of Title VII.

81. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, WILLIAM DEFREITAS, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, DELTA AIR LINES, INC., and the following relief:

A. A declaration that Defendant violated Title VII by retaliating against Plaintiff for engaging in protected activity;

B. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C. Compensatory damages as allowed by law;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Reasonable attorneys' fees, costs, and expenses as allowed by

law; and

F.     Such other and further relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Disability Discrimination
### Fla. Stat. §§ 760.01-760.11

82.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

83.     At all times material herein, Defendant was an employer within the meaning of the FCRA.

84.     At all times material herein, Plaintiff was a qualified individual with a disability or handicap within the meaning of the FCRA in that he had a physical impairment that substantially limited one or more major life activities, including performing manual tasks, and he could perform the essential functions of his position with or without reasonable accommodation.

85.     Plaintiff's work-related injury to both hands substantially limited his ability to perform manual tasks and required surgical intervention and ongoing medical care.

86. Defendant knew of Plaintiff's disability through, among other things, Plaintiff's work-related injury, his workers' compensation claim, and his disability-related medical leave.

87. After Defendant learned of Plaintiff's disability and after Plaintiff took disability-related leave, Defendant subjected Plaintiff to adverse employment actions because of his disability, including escalating disciplinary scrutiny, suspending Plaintiff while he was on workers' compensation leave, and terminating his employment while he remained on protected medical leave.

88. Defendant claimed to rely on a progressive discipline framework, yet Plaintiff had no prior disciplinary history in nearly twenty years, and the conduct used to justify termination was either never previously raised as a basis for discipline, was commonly tolerated, or was not cited at the time of termination.

89. Defendant's stated reliance on alleged misconduct was a pretext, and Plaintiff's disability and disability-related limitations were motivating factors in the decision to terminate his employment.

90. Defendant's conduct constituted unlawful disability discrimination in violation of the FCRA.

91.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses recoverable under the FCRA.

**WHEREFORE**, Plaintiff, WILLIAM DEFREITAS, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, DELTA AIR LINES, INC., and the following relief:

A.    A declaration that Defendant violated the FCRA by discriminating against Plaintiff because of his disability;

B.    Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.    Compensatory damages as allowed by law and within any applicable statutory limits;

D.    Pre-judgment and post-judgment interest as allowed by law;

E.    Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.    Such other and further relief as the Court deems just and proper.

<u>COUNT V</u>
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Retaliation**
**Fla. Stat. §§ 760.01-760.11**

92.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

93.     At all times material herein, Defendant was an employer within the meaning of the FCRA.

94.     Plaintiff engaged in protected activity under the FCRA by opposing what he reasonably believed to be unlawful conduct, including by participating in a group complaint regarding workplace conditions, favoritism, and morale, and by reporting inappropriate and offensive conduct by coworker Jeff Gater.

95.     Defendant knew Plaintiff engaged in protected activity under the FCRA.

96.     After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse employment actions.

97.     Those materially adverse actions included labeling Plaintiff the "leader" of the group complaints, threatening him with demotion,

subjecting him to heightened scrutiny and his first discipline in nearly twenty years, suspending him, and ultimately terminating his employment.

98.     The materially adverse actions taken against Plaintiff would dissuade a reasonable employee from engaging in protected activity under the FCRA.

99.     The temporal proximity between Plaintiff's protected activity and the adverse actions, together with the escalation and selectivity of Defendant's conduct, supports an inference of retaliatory intent and a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions.

100.     Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the FCRA.

101.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses recoverable under the FCRA.

**WHEREFORE**, Plaintiff, WILLIAM DEFREITAS, demands trial by jury on all issues so triable as of right, and respectfully requests judgment

against Defendant, DELTA AIR LINES, INC., and the following relief:

A.      A declaration that Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity;

B.      Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.      Compensatory damages as allowed by law and within any applicable statutory limits;

D.      Pre-judgment and post-judgment interest as allowed by law;

E.      Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.      Such other and further relief as the Court deems just and proper.

## COUNT VI
### RETALIATION IN VIOLATION OF FLA. STAT. § 440.205

102.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

103.    Plaintiff was an employee of Defendant.

104.    In June 2023, while performing his work duties, Plaintiff sustained a serious work-related injury to both hands.

105.    Following his injury, Plaintiff filed a workers' compensation claim, which was his only workers' compensation claim during his employment.

106.    Filing a workers' compensation claim is protected activity under Florida Statutes Section 440.205.

107.    Defendant knew of Plaintiff's workers' compensation claim.

108.    Defendant subjected Plaintiff to adverse employment actions.

109.    While Plaintiff was on protected medical leave for his work-related injury, Defendant suspended him on May 31, 2024, and ultimately terminated his employment on November 26, 2024.

110.    The adverse employment actions were motivated by Plaintiff's workers' compensation claim.

111.    The decision to suspend and terminate an employee who was already out on workers' compensation leave, particularly where the alleged misconduct was minor, disputed, or previously tolerated, supports an inference that the adverse actions were motivated by Plaintiff's workers' compensation claim.

112.    Defendant's stated reason for termination, an alleged confidentiality violation, was pretextual.

113. But for Plaintiff's filing of a workers' compensation claim, Plaintiff would not have been subjected to suspension and termination.

114. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and other damages recoverable under Florida law.

**WHEREFORE**, Plaintiff, WILLIAM DEFREITAS, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, DELTA AIR LINES, INC., and the following relief:

A. A declaration that Defendant violated section 440.205, Florida Statutes;

B. Back pay, lost benefits, and other make-whole relief;

C. Reinstatement or, in lieu thereof, front pay;

D. Compensatory damages recoverable under Florida law;

E. Pre-judgment and post-judgment interest as allowed by law;

F. Taxable costs as allowed by law; and

G. Such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 22nd day of July 2026.

> */s/ Jason W. Imler, Esq.*
> Jason W. Imler
> Florida Bar No. 1004422
> Alberto "Tito" Gonzalez
> Florida Bar No. 1037033
> **Imler Law**
> 23110 State Road 54, Unit 407
> Lutz, Florida 33549
> (P): 813-553-7709
> Jason@ImlerLaw.com
> Tito@ImlerLaw.com
> Ashley@ImlerLaw.com
> Tiffany@ImlerLaw.com